UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATALIE L., on behalf of CHAD L, deceased,<br><br>　　　　　Petitioner,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security Administration,<br><br>　　　　　Respondent. | Case No. 1:19-CV-00489-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Before the Court is Natalie L.'s Petition for Review of the final decision of the Commissioner of Social Security denying her deceased husband Chad L.'s application for a period of disability and disability insurance benefits, filed on December 12, 2019. (Dkt. 1.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner for further proceedings.

MEMORANDUM DECISION AND ORDER - 1

## PROCEDURAL AND FACTUAL HISTORY

On May 2, 2013, Petitioner Natalie L.'s husband, Claimant Chad L., protectively

filed for a period of disability and disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-433.[1] The application was denied initially and on

reconsideration.

A hearing was conducted on July 22, 2015, before Administrative Law Judge

(ALJ) Christopher R. Inama. After hearing testimony from Claimant and a vocational

expert, the ALJ issued a decision finding Claimant not disabled on October 6, 2015. (AR

21-35.) Claimant submitted a timely request for review from the Appeals Council. While

review was pending, Claimant regrettably died of a pulmonary embolism on September

23, 2016. (AR 2039.) Petitioner was substituted as a party for Claimant. (AR 167.) On

January 12, 2017, the Appeals Council denied the request for review. Petitioner timely

appealed to the Court. *Natalie L. v. Berryhill*, Civil No. 1:17-cv-00080-REB, 2018 WL

4643055 (D. Idaho Feb. 21, 2017).

On September 27, 2018, the Court issued a memorandum decision and order

finding the ALJ erred in rejecting the lay opinion of Petitioner and, consequently, the

Residual Functional Capacity (RFC) was not supported by substantial evidence.

(AR1883-1900.) However, the Court found the ALJ did not err in determining that

---

[1]This action is brought by Petitioner Natalie L. on behalf of her deceased husband Chad L., whose alleged disability is at issue. In this Order, the Court will distinguish between the two by referring to Natalie L. as "Petitioner" and to Chad L. as "Claimant."

Claimant's symptom statements were not credible and in giving limited weight to the opinion of treating provider Dr. Scott Hoopes. (AR 1893-1900.) The case was remanded pursuant to sentence four of 42 U.S.C. § 405(g). (AR 1901.) The Appeals Council vacated the Commissioner's decision and remanded the case to ALJ Inama for further proceedings consistent with the Order of the Court. (AR 1927.)

On remand, ALJ Inama conducted a hearing on July 24, 2019. (AR 1820-1842.) After considering testimony from Petitioner and a second vocational expert, the ALJ issued a decision on August 19, 2019, finding Claimant not disabled. (AR 2043-2060.) The Appeals Council denied Petitioner's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Petitioner timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Petitioner contends Claimant was disabled beginning September 16, 2011.[2] At the time of the date last insured, December 31, 2013, Claimant was 49 years of age. Claimant had an associate's degree in applied science, computers and networks, and other educational certificates. (AR 323.) Claimant had prior work experience as a call center representative. (AR 205.) Petitioner asserts Claimant was unable to work due to his physical and mental impairments of: bipolar disorder with mania; type II diabetes; seizure disorder; chronic pancreatitis; depression; arthritis; ADHD; insomnia; anemia, vitamin D deficiency; and hypertension. (AR 181.)

---

[2] The original onset date of July 7, 2009, was later amended to September 16, 2011. (AR 50.)

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Garrison*, 759 F.3d at 1010; *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the

error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since the alleged onset date. The ALJ found at step two that Claimant had the following medically determinable, severe impairments: diabetes mellitus type two; major motor seizures; schizoaffective disorder; bipolar disorder with psychosis; depression; anxiety disorder; and alcohol-substance addiction disorder. (AR 2045.) The ALJ concluded Claimant's borderline obesity; peripheral neuropathy; sleep apnea; degenerative disc disease of the lumbar and cervical spine; degenerative joint disease of the left shoulder/osteoarthritis; wrist pain; chronic pancreatitis; attention deficit hyperactivity disorder (ADHD); insomnia; hypertension; and vitamin D deficiency, were all non-severe physical impairments. At step three, the ALJ concluded Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ next assessed the limitations caused by Claimant's impairments and determined he retained the Residual Functional Capacity (RFC) to perform light work with some physical, environmental, and mental limitations. (AR 2051.) At step four, the ALJ determined Claimant was unable to perform any past relevant work. (AR 2058.)

Therefore, the ALJ moved to step five where he found that, based on Claimant's age, education, work experience, RFC, and the testimony of the vocational expert, Claimant could perform the requirements of other work existing in significant numbers in the national economy such as bench assembler, small products assembler, machine operator, final assembler, bench hand, and preparer. (AR 2059.) Accordingly, the ALJ determined Claimant was not disabled.

## ISSUES PRESENTED[3]

Petitioner raises the following issues as grounds for remand:

1.  Whether the ALJ erred in evaluating Petitioner's lay statement and testimony.

2.  Whether the ALJ erred at step two by failing to consider Claimant's peripheral neuropathy a severe impairment, and not recognizing Claimant's deep vein thrombosis.

3.  Whether the ALJ improperly considered Claimant's alcohol use.

4.  Whether the ALJ erred in assessing Claimant's RFC.

## DISCUSSION

### 1.    Petitioner's Lay Statement and Testimony

### A.    Legal Standard

Individuals, such as spouses, who give testimony about a claimant's impairments can qualify as a lay witness. SSR 06-03p, 2006 WL 2329939, at *2. Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects

---

[3] The Court has combined its discussion of certain issues for logistical reasons.

a claimant's ability to work is competent evidence that an ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). To reject such testimony, an ALJ must provide specific "reasons that are germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1114 (remaining citation omitted)); *Taylor v. Comm'r Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009)).

Here, the ALJ gave limited weight to Petitioner's written statement and testimony, stating:

> [Petitioner] is not medically trained, is not a disinterested third party (in that she has a direct pecuniary interest in the outcome of this case), and in her written statement ([Ex.] 43F) does not even mention the claimant's well-documented alcohol abuse. Indeed, in both her written statement and hearing testimony, she ignores the well documented causal and exacerbating connections between the claimant's physical/psychological problems and his alcohol abuse. This indicates, for example (not by way of limitation), alcohol pancreatitis (Ex. 1F/4), acute alcohol withdraw (Ex. 4F), alcohol dependence (Ex. 5F), alcohol withdraw (Ex. 6F), acute encephalopathy due to alcohol intoxication and alcohol hepatitis (Ex. 8F), alcohol withdraw/delirium tremens (Ex. 9F), and alcohol intoxication and dependence (Ex. 18F). Instead, [Petitioner] tries to excuse the alcohol abuse by asserting that the claimant was "self-medicating," without acknowledging that his purported "self-medication" with alcohol was causing or exacerbating his problems. Her opinions are not supported by or consistent with the medical evidence of record. Therefore, I give her opinions limited weight.

(AR 2057.)

Petitioner argues the ALJ erred by 1) failing to provide a germane reason for discrediting Petitioner's lay statement and testimony, and 2) violating the rule of law and rule of mandate. (Dkt. 20, 22.)

B.       Analysis

The ALJ stated three bases for assigning limited weight to Petitioner's statement and testimony: 1) Petitioner was not medically trained; 2) Petitioner was not a disinterested third party; and 3) Petitioner did not mention Claimant's alcohol abuse and was inconsistent with the medical evidence in the record. (AR 2057.) The Court finds the first two bases were insufficient.[4] However, the ALJ's third basis was a specific and germane reason for discrediting Petitioner's statements.

As to the first reason, the ALJ concluded without explanation that Petitioner was not medically trained. That was not a specific or germane reason for rejecting Petitioner's statements. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify" as to a claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993). Further, the regulations allow for evidence from "non-medical sources." 20 C.F.R. § 404.1513(e)(4)(2013). The ALJ therefore erred in discrediting Petitioner's testimony on this basis without explaining why Petitioner's lack of medical training rendered her testimony unreliable.

---

[4] The Court notes that the first two bases are strikingly similar, although slightly different, to those found erroneous by the prior reviewing court. The ALJ's previous decision assigned Petitioner's opinion little weight because: 1) she was not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her observations is questionable; and 2) by virtue of her spousal relationship with Claimant, her statements cannot be considered the observations of a disinterested third-party whose opinion would not tend to be colored by affection for claimant and a natural tendency to agree with the symptoms alleged by claimant. (AR 34.) The nuanced differences in the first and second bases do not change the outcome here, however.

As to the second reason, the ALJ stated that Petitioner was not a disinterested third party because of her direct pecuniary interest in the outcome of the case. This was also not a specific or germane reason to reject Petitioner's statements. Most, if not all, spouses regardless of whether the claimant is deceased, have a pecuniary interest in the outcome of a disability case. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). ("[I]nsofar as the ALJ relied on characteristics common to all spouses, [the ALJ] ran afoul of our precedents."). Regardless of their vested interest in a claimant's case, whether financial or emotional, the ALJ must consider statements by family members. *See Nguyen*, 100 F.3d at 1467 (Lay witness testimony regarding the severity of a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account.).

To reject a lay witness statement, the ALJ must "tie the reasoning of their credibility determinations to the particular witnesses whose testimony they reject." *Valentine*, 574 F.3d at 694. Here, the ALJ erred in relying on a characteristic common to all spouses as a basis for giving limited consideration to Petitioner's statements, without explaining how the particular circumstances in this case may have warranted doing so. *Id.* Petitioner's pecuniary interest in the case, alone, was not a sufficient basis for discrediting her statements.

However, the ALJ's third basis – that Petitioner failed to account for Claimant's alcohol abuse and that her statement and testimony were inconsistent with the medical record – was a specific, germane reason for rejecting Petitioner's statements.

Inconsistency with medical evidence is a germane reason to discredit lay witness statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The Ninth Circuit has recognized a difference between (1) a lay witness statement that lacks affirmative support in the record, which is not necessarily a proper reason for rejecting testimony, and (2) a lay witness statement that is actually inconsistent with medical evidence in the record, which is a proper reason for rejecting testimony. *Compare Bruce*, 557 F.3d at 1116 with *Bayliss*, 427 F.3d at 1218.

Here, the ALJ discredited Petitioner's statement and testimony because she failed to mention Claimant's "well-documented alcohol abuse"; "ignored the well documented causal and exacerbating connections" between Claimant's problems and his alcohol abuse; and instead "excuse[d] the alcohol abuse" as self-medication. (AR 2057.) The ALJ identified several medical records documenting Claimant's alcohol abuse and the exacerbating impact it had on his physical and mental impairments. The ALJ explained that Petitioner's failure to address Claimant's alcohol abuse in her written statement and her testimony minimizing the impact of the alcohol abuse on Claimant's impairments and functional limitations were inconsistent with the several medical records identified by the ALJ. Contrary to Petitioner's argument, the ALJ properly accounted for Petitioner's hearing testimony regarding Claimant's alcohol abuse. (AR 2057.) Thus, the ALJ appropriately set forth his reasons for concluding that Petitioner's statements were inconsistent with the medical evidence.

While Petitioner disagrees with the ALJ's view of the record and conclusion, the ALJ's reasoning and decision were sufficiently explained and supported by substantial

evidence. For these reasons, the Court finds the third basis set forth by the ALJ was a sufficiently specific and germane reason for assigning limited weight to Petitioner's statements and testimony.

The Court further finds the ALJ did not violate the rule of law or rule of mandate as alleged by Petitioner. (Dkt. 20 at 9-10.) "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). The rule of mandate is similar to, but broader than, the law of the case doctrine and provides that any District Court that has "received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *Hall*, 697 F.3d at 1067.

Here, the remand order did not require the ALJ to address Petitioner's lay testimony in any particular fashion or preclude the ALJ from reevaluating and more fully explaining the basis for his conclusions regarding Petitioner's statements. (AR 1899) (The case was remanded for further proceedings "to decide whether Claimant was disabled during the period from his amended alleged onset date through his date last insured.") Indeed, the relevant assignment of error found by the prior reviewing court and basis for remand was the ALJ's failure to provide a sufficient explanation for concluding that Petitioner's lay statement and testimony were inconsistent with the medical evidence. (AR 1891.) As determined above, the ALJ adequately addressed this error on remand.

**2.      Step Two and Consideration of Limitations in the RFC Determination**

Petitioner contends the ALJ erred at step two by failing to consider Claimant's peripheral neuropathy a severe impairment and not recognizing Claimant's deep vein thrombosis (DVT). (Dkt. 20, 22.) Consequently, Petitioner argues, the ALJ failed to address the limitations resulting from Claimant's neuropathy and DVT in making the RFC determination. Respondent maintains the ALJ's assessment of Claimant's impairments at step two and the RFC determination were supported by substantial evidence and, regardless, that any error was harmless. (Dkt. 21.)

**A.      Legal Standard**

At step two, the ALJ determines if the claimant has a medically "severe" impairment or combination of impairments. 20 C.F.R. § 404.1520. To satisfy the severity requirement, the claimant must prove the impairment by providing objective medical evidence; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § 416.921.  An impairment is considered "severe" if a claimant's physical or mental ability to complete basic work activities are significantly limited. *Id.*, § 404.1520.  Basic work activities include the "abilities and aptitudes necessary to do most jobs," such as walking, sitting, lifting, speaking, remembering simple instructions, using judgment, and adapting to changes in a routine work setting. *See* 20 C.F.R. § 404.1522.  With the exception of expected death, the impairment must also have lasted or be expected to last at least twelve months. *Id.* § 404.1509. When evaluating whether the impairment or impairments are severe, the combined effect of all impairments should be considered,

without regard to whether any impairment on its own would be sufficiently severe. 20 C.F.R. § 416.923.

Reviewing an ALJ's findings at step two, the Court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Failure to address an impairment or a finding of not severe at step two is harmless if the ALJ considered the impairment when formulating the claimant's RFC. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

### B.     Analysis

Here, the ALJ concluded that Claimant's neuropathy was non-severe and did not discuss Claimant's DVT. For the reasons that follow, the Court finds the ALJ did not error at step two and that any error was harmless.

### i.     Peripheral neuropathy

As to Claimant's peripheral neuropathy, the ALJ stated:

> The claimant was diagnosed with neuropathy. He originally alleged right-side neuropathy, particularly on the lateral aspect of his right foot. He has been specifically diagnosed with neuropathy on the plantar surface of his feet, with peripheral autonomic neuropathy and with polyneuropathy. He complained of chronic burning and tingling in his feet. He did not complain of trouble healing or have amputations on his feet. He took medication for neuropathy. He had been noted as having normal strength, motor control and coordination. For all these reasons, I find the claimant's neuropathy was non-severe prior to the date last insured.

(AR 2046-2047) (citations omitted.)

Petitioner contends there was adequate medical and non-medical evidence showing Claimant's neuropathy significantly impaired his ability to sit, stand, or walk for prolonged periods of time. (Dkt. 22 at 2.) Namely, Petitioner's and Claimant's symptom statements, as well as medical records reporting: strength discrepancy in Claimant's lower extremities; abnormal sensation in his feet; decreased lower extremity reflexes; and polyneuropathy. (Dkt. 20, 22) (citing AR 211, 215, 497, 1259, 1329, and 1395.) Respondent maintains the ALJ properly addressed Claimant's neuropathy, citing medical records reporting normal exam findings. (Dkt. 21 at 4-5.)

The Court finds the ALJ's determination that Claimant's neuropathy was a non-severe impairment is supported by substantial evidence. *See Webb*, 433 F.3d at 687. The ALJ recognized the medical records diagnosing right-side neuropathy; Claimant's complaints of chronic burning and tingling in his feet; and that Claimant treated his neuropathy with medication. (AR 2046-2047.) However, the ALJ concluded that the medical evidence did not support finding Claimant's neuropathy severe, pointing to medical records of physical exams reporting Claimant had normal strength, motor control, and coordination. (AR 2046-2047.)

Petitioner does not dispute the records relied on by the ALJ. Instead, Petitioner cites other records containing indications that Claimant experienced symptoms or may have had limitations resulting from his neuropathy. (Dkt. 20 at 12) (citing records showing a strength discrepancy in Claimant's lower extremities, limited range of motion, absent and diminished sensation in the feet, decreased reflexes). Petitioner's

disagreement with the ALJ's assessment of the medical records does not establish error, however.

The ALJ is the "final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (If there is substantial evidence to support the ALJ's factual decision, they must be upheld even when there is conflicting evidence.). Here, the medical records of physical examination findings from the relevant time period relied upon by the ALJ constitute substantial evidence supporting the determination that Claimant's neuropathy was non-severe. (AR 2046-2047) (citing records showing Claimant reported mild symptoms of neuropathy which he treated with medication, but that Claimant displayed normal strength, motor control, and coordination).

Petitioner also argues the ALJ committed legal error by requiring that an individual suffer amputations or non-healing wounds before neuropathy will be considered a severe impairment. (Dkt. 22 at 2.) This argument mischaracterizes the ALJ's decision. The ALJ did not state or suggest that trouble healing or amputations were necessary to establish that Claimant's neuropathy was severe. Rather, the ALJ simply observed the absence of any complaints by Claimant of trouble healing or any amputations. (AR 2046.) As discussed above, the ALJ's determination that Claimant's neuropathy was non-severe was based on substantial evidence in the medical records

indicating Claimant treated his neuropathy with medication and that Claimant had normal strength, motor control, and coordination. (AR 2046-2047.) For these reasons, the Court finds the ALJ did not err at step two in concluding Claimant's neuropathy was not severe.

### ii.    DVT

The ALJ did not mention DVT in his step two discussion. Instead, the ALJ stated: "Any diagnosis, ailment, or condition not specifically set out herein was either not severe or not medically determinable during the period at issue." (AR 2049.)

Petitioner asserts that the ALJ erred in failing to address Claimant's DVT, maintaining the record contains ample evidence of Claimant's DVT. (Dkt. 20, 22.) Specifically, Petitioner relies on medical records indicating chronic leg swelling; lower extremity edema post-DVT; a venous duplex ultrasound showing a chronic partial obstruction throughout the right leg; and that Claimant passed away from a pulmonary emboli. (Dkt. 20 at 12-13.) Petitioner also points to symptom testimony that Claimant's leg would swell with sitting for prolonged periods of time or short walks, resulting in Claimant needing to elevate his leg and apply ice. (Dkt. 22 at 3.) Respondent argues that Petitioner's claim is "clearly at odds with the bulk of the medical evidence, finding no edema (swelling) in the months leading up to the date last insured." (Dkt. 21 at 5, n. 2) (citing several medical records of physical examination where no edema was found.)

Petitioner bears the burden of proving that Claimant had an impairment that met or equaled the criteria of a listed impairment at step two. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The "ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination,

unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400

F.3d at 683 (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (ALJ's failure to

consider equivalence was not reversible error because the claimant did not offer any

theory, plausible or otherwise, as to how his impairments combined to equal a listing

impairment)).

Here, Petitioner did not specify which listing she believes Claimant's DVT met or

equaled, and has not forth evidence supporting a finding that Claimant's DVT met a

listed impairment. 20 C.F.R. § 404.1525(d).

During the hearing, counsel for Petitioner claimed Claimant's "chronic DVT in his

right leg…created edema and a lot of difficulty with walking" and cited records that she

argued showed the DVT should have been considered at step two. (AR 1827-1828.)

Namely, a March 2012 consultation record where Claimant reported having "edema or

swelling of lower extremities of moderate magnitude on occasion [that] began after he

had a blood clot in his right leg," and that his left foot also swelled. (AR 401-402.)

Petitioner also referenced a preliminary leg ultrasound dated May 11, 2013, reporting:

"no evidence of acute deep or superficial obstruction bilaterally. Chronic partial

obstruction is noted throughout the right leg." (AR 741.)

Although Petitioner has cited evidence of Claimant's prior DVT diagnosis, which

is not in question, Petitioner fails to identify evidence establishing that Claimant's DVT

met or medically equaled a listed impairment during the relevant time period.[5] The evidence relating to the functional limitations of Claimant's DVT relied on by Petitioner are Claimant's own reports to medical providers, and symptom statements by Claimant and Petitioner. The ALJ's decision recognized the statements that Claimant's leg would swell with walking or prolonged sitting and that he needed to elevate and ice his leg periodically during the day. However, the ALJ discredited the statements of both Claimant and Petitioner as inconsistent with the record and otherwise unreliable. (AR 2051-2054, 2056-2057.)

Petitioner has not challenged the ALJ's assessment of Claimant's statements. And, as discussed above, the ALJ did not err in assigning limited weight to Petitioner's lay statement and testimony. Thus, the evidence relied on by Petitioner to support her contention that Claimant's DVT met or medically equaled a listed impairment was discredited by the ALJ. Because Petitioner has not set forth evidence of functional limitations which would support finding that Claimant's DVT met a listing, the ALJ was not required to address Claimant's DVT at step two. *Burch*, 400 F.3d at 683.

### iii.    The RFC Assessment and Harmless Error

Even if the ALJ erred at step two, the error was harmless if the RFC assessment included the relevant limitations. *See Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir.

---

[5] There is no dispute that Claimant had a history of DVT as there are records of Claimant's right-leg DVT dating back to 2007. (AR 285, 401-402, 713, 740-741, 1221.) Indeed, some of the medical records cited by Responded noted Claimant's history of DVT. (Dkt. 21 at 5, n. 2.)

2017). The purpose of step two is to filter out claims that are too weak to be eligible for disability benefits. *Id.* at 1048. "It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, when assessing the RFC, the ALJ must consider all limitations and restrictions imposed by every impairment of the claimant, even those not labeled severe." *Id.* at 1049.

Here, Petitioner contends the ALJ's RFC assessment failed to account for the symptoms and limitations relating to Claimant's neuropathy and DVT, such as leg swelling after a ten minute walk, increased activity, or prolonged sitting, and the need to rest in an amount exceeding the allowable time off task during a given workday. (Dkt. 20 at 15-16.) These limitations, Petitioner argues, were not included in any hypothetical to the vocational expert. Respondent maintains "the ALJ fully considered the alleged limitations stemming from these impairments – swelling, pain, and attendant standing and walking problems – when assessing [Claimant's] RFC." (Dkt. 21 at 5.)

The medical records cited by Petitioner reflect that Claimant experienced some mild or limited symptoms of neuropathy and DVT – lower extremity strength discrepancy, abnormal or absent sensation in his feet, and decreased lower extremity reflexes and polyneuropathy. (Dkt. 20 at 12-13), (Dkt. 22 at 2-3.) Many of these same records, however, also report Claimant had normal strength and coordination, and no edema. (AR 741, 1329.) Again, the ALJ is the final arbitrator of ambiguities in the record. Here, the ALJ considered the symptoms and limitations alleged and concluded that the medical records do not support assessing all of the functional limitations in the

RFC as suggested by Petitioner. The ALJ's conclusion is supported by substantial evidence.

While there are medical records diagnosing Claimant's neuropathy and recording his history of DVT, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). Instead, the ALJ was required to consider evidence of functional limitations and restrictions in formulating the RFC. *Burch*, 400 F.3d at 683. Here, Petitioner has not identify any evidence of functional limitations stemming from Claimant's neuropathy and DVT that the ALJ failed to consider.

Instead, the ALJ stated that, in determining "the claimant's [RFC] during the period at issue, I considered the functional limitations resulting from all of [claimant's] medically determinable impairments, even those that were non-severe." (AR 2048.) In formulating the RFC, the ALJ explained that "I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" as required by the regulations. (AR 2051.) The ALJ noted the walking and sitting limitations alleged by Claimant and Petitioner are contained in their statements and testimony. (AR 2051-2051, 2056-2057.) As discussed previously, the ALJ discounted the statements by Claimant and Petitioner and, therefore, did not include sitting and walking limitations in the RFC.

The ALJ concluded that Claimant retained the ability to engage in independent activities including riding his bike, walking, fishing, and sometimes attending social gatherings. (AR 2049, 2050, 2052.) The ALJ also detailed evidence in the record

showing Claimant worked from home on computers and in other related fields as well as being able to perform 150 hours of community service in July 2013. (AR 2054.) Because the ALJ considered the walking and sitting limitations alleged by Petitioner in making the RFC determination, any error at step two was harmless. Further, the Court finds the ALJ's RFC determination was supported by substantial evidence.

### 3.   Consideration of Claimant's Alcohol Use

Petitioner contends the ALJ improperly considered the role Claimant's alcohol use had on his severe impairments and in formulating the RFC. (Dkt. 20 at 13.) Specifically, Petitioner argues the ALJ erred by failing to first determine that Claimant was disabled before evaluating the impact of his alcohol use. (Dkt. 22 at 4.) Respondent maintains the ALJ's discussion of Claimant's alcohol use when assessing the RFC was consistent with the regulations. (Dkt. 21 at 7.) For the reasons that follow, the Court finds the ALJ did not err in his consideration of Claimant's alcohol use.

### A.   Legal Standard

An individual is not disabled "if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). When evaluating whether a claimant's drug

addiction or alcoholism (DAA)[6] is a contributing factor material to the determination of disability:

> [A]n ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ should proceed under §§ 404.1535 or 416.935 to determine if the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R. §§ 404.1535, 416.935.

*Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001); *see also* SSR 13-2p; *Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007). Thus, if the ALJ finds that the claimant is not disabled under the initial five-step inquiry without separating out the impact of alcoholism or drug addiction, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. *Bustamante*, 262 F.3d at 955 ("[i]t follows that an ALJ should not proceed with the analysis under §§ 404.1535 or 416.935 if he or she has not yet found the claimant to be disabled under the five-step inquiry.").

If the ALJ finds the claimant is disabled and proceeds to the analysis under 20 C.F.R. §§ 404.1535 or 416.935, the ALJ evaluates what limitations remain if the claimant stopped using drugs or alcohol. If the remaining limitations would not be disabling after

---

[6] "Although the terms 'drug addiction' and 'alcoholism' are medically outdated, [the SSA] continue[s] to use the terms because they are used in the Act." SSR 13-2p (Feb. 20, 2013) (defining DAA).

applying the sequential evaluation a second time, then the claimant's substance abuse is a contributing factor material to the disability determination and benefits must be denied. *Parra*, 481 F.3d at 747–48; 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i).

### B.    Analysis

Here, the ALJ conducted the initial five step inquiry and determined Claimant was not disabled considering all of his impairments, including those caused by his alcohol use, because he was able to do other work. *See Bustamante*, 262 F.3d at 955 (The ALJ conducts the sequential analysis without separating out the impact of alcohol or drug use.). The ALJ therefore did not proceed through the sequential evaluation a second time to determine whether Claimant's alcohol use was material to the disability determination under 20 C.F.R. § 404.1535 or § 416.935. *See* SSR 13-2p at *4 ("Under the Act and our regulations, we make a DAA materiality determination only when...we find that the claimant is disabled considering all impairments, including the DAA."); *Bustamante*, 262 F.3d at 955.

However, Petitioner maintains the ALJ erred at steps four and five of the initial disability determination by improperly considering the impact and effect of Claimant's alcohol use on his other impairments - i.e., that his alcohol use made his other conditions worse. (Dkt. 20 at 14) (Dkt. 22 at 5) (arguing the ALJ "put the cart before the horse."). Petitioner faults the ALJ for looking primarily to Claimant's alcohol use at steps four and five to find him not disabled, when there were a multitude of unrelated conditions that rendered Claimant disabled. (Dkt. 22 at 4-5.) The Court disagrees.

The ALJ properly considered Claimant's history of alcohol dependency in the context of evaluating Claimant's symptom statements; Petitioner's lay statement and testimony; and during his assessment of the record. (AR 2052-2057.) The ALJ is not required to "wholly pretend drug use does not exist in making the initial disability determination." *Missell v. Colvin*, No. CV 13-8226-PCT-JAT, 2014 WL 2048082, at * 4 (D. Ariz. May 19, 2014). The ALJ may consider a claimant's alcohol use, along with his or her other impairments, during the initial disability determination as a factor bearing on the credibility of symptom statements and lay testimony, and in assessing the record. *See Ogden v. Comm'r Soc. Sec. Admin.*, No. CV-18-00415-TUC-EJM, 2019 WL 4565183, at *8 (D. Ariz. Sept. 20, 2019) (citing *Missell*, 2014 WL 2048082, *4–5 (ALJ did not err by considering claimant's DAA in making credibility determination.)).

While "[t]he ALJ may not find a claimant is not disabled by reason of his substance abuse without conducting the second five-step sequential analysis set out in 20 C.F.R. §§ 404.1535(a) and 416.935(a)," "the ALJ may make reference to a claimant's substance abuse as relevant to corollary matters (e.g., evidence inconsistent with a claimant's testimony) without conducting the drug-and-alcohol analysis." *Curry v. Colvin*, No. 6:14-cv-00881-BR, 2015 WL 4067193, at *4 (D. Or. May 11, 2015) (citing *Bustamante*, 262 F.3d at 955 and *Esslinger v. Astrue*, 479 F. App'x 59, 60 (9th Cir. 2012)).

Here, the ALJ found Claimant's alcohol-substance addiction disorder was a severe impairment, but that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 2045-

2051.) The ALJ examined the alcohol use in evaluating Claimant's representations that he was unable to work. (AR 2054.) The ALJ concluded that the record "does not support that [Claimant's] mental or physical problems completely disabled him, prior to the date last insured," noting that Claimant's ability to work prior to and after his alleged onset date. (AR 2054.) Thus, the ALJ's initial disability determination concluded that Claimant was not disabled considering all of his impairments, including those caused by his alcohol use. *See Bustamante*, 262 F.3d at 955 (The ALJ first conducts the five step sequential analysis without separating out the impact of alcohol or drug use.).

Contrary to Petitioner's contention, the ALJ did not improperly conclude that Claimant was not disabled by reason of his substance abuse. Instead, the ALJ appropriately considered Claimant's alcohol use when assessing the record and evaluating the symptom statements. *Ogden*, 2019 WL 4565183, at *8 ("[T]he ALJ properly considered the effects of DAA when assessing the record and making the disability determination."). The ALJ evaluated all of Claimant's impairments, regardless of severity, and the limitations of those impairments, and assessed an RFC that was supported by substantial evidence in the record. Specifically, the ALJ determined Claimant retained the ability to perform light work with some physical and mental limitations and that there were jobs that existed in significant numbers in the national economy that Claimant could have performed. The ALJ therefore found Claimant not disabled. Notably, the ALJ rejected the opinions of the state agency consultants for proceeding to the materiality analysis, stating: "the evidence throughout the record supports less extreme limitations even considering the alcohol abuse." (AR 2055-2056.)

Based on this record, the Court finds the ALJ did not err in his consideration of Claimant's alcohol use during the initial disability determination.

Petitioner's reliance on statements made by the ALJ during the hearing do not support her claims of error. (Dkt. 20 at 14-15.) The exchanges with the ALJ at the hearing quoted by Petitioner are instead indicative of the non-adversarial nature of disability hearings. "Social Security disability determinations are 'investigatory, or inquisitorial, rather than adversarial.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2nd Cir. 2009). Even where a claimant is represented by counsel, the ALJ has a duty to develop the record and explore for relevant facts, which is what the ALJ did here. *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000) ("[I]t is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits[.]"); *Chiccino v. Berryhill*, No. 3:17-cv-05713-TLF, 2018 WL 3769084, at * 2 (W.D. Wash. Aug. 9, 2018) ("The hearing is not adversarial in nature; the ALJ has a duty to develop the record regardless whether the claimant is represented by counsel and must inform himself or herself about the facts that are relevant.").

"[T]he purpose of a Social Security hearing is to adduce pertinent information for the ALJ to later make a determination based on the entire record. It is not to reach an ultimate conclusion or render a final verdict." *Stottlemire v. Berryhill*, No. 5:16-cv-90, 2018 WL 1277740, at *11 (S.D. Ga. March 12, 2018). In turn, the focus of the Court's inquiry on review "is not whether the ALJ adequately explained each statement made on the record at the hearing but whether the ALJ's final determination rests on substantial evidence." *Id*.; 42 U.S.C. § 405(g) (Judicial review is of the "final decision of the

Commissioner of Social Security made after a hearing to which [the claimant] was a party.").

Here, the ALJ's written decision became the final decision of the Commissioner when the Appeals Council denied review. 20 C.F.R. § 404.981. While the ALJ's hearing comments are part of the administrative record, the ALJ's written decision is the final disability determination under review. *See P.C.S. v. Comm'r Soc. Sec. Admin.*, No. 09-1849, 2011 WL 4499368 at *1 (W.D. La. Sept. 27, 2011) (holding that an ALJ's written decision, which provides findings of fact and the reasons for denying a claim, controls over statements that the ALJ made at the administrative hearing); *Woods v. Barnhart*, No. 03–2592–KJV, 2004 WL 1558794, *8 n. 5 (D. Kan. July 12, 2004) ("the ALJ's written decision, not his questions at the hearing, control the findings subject to review."); *Smith v. Astrue*, No. 2:08-cv-452, 2009 WL 4067393, at *4 (E.D. Va. Nov. 2, 2009) (finding the "written decision is the mechanism for the ALJ to render his decision" and that "[t]he ALJ's statements on the record cannot disturb the final written decision.").

As discussed above, the ALJ adequately explained his decision and supported it with substantial evidence. The ALJ concluded Claimant was not disabled and, therefore, properly did not proceed to determine whether Claimant's alcohol use was material to the disability determination. Indeed, the ALJ's statements at the hearing reflect that he understood the two-step process for addressing a claimant's substance abuse. (Dkt. 20 at 15) (citing AR 1836) (ALJ: "Well, I think that (alcoholism) kills your claim, ultimately. I mean if I were to find him disabled for some reason, I think the [DAA] knocks the case out anyway.").

To the extent the ALJ's decision is read as having impermissibly considered the effect of Claimant's alcohol abuse in making the disability determination, the Court finds any error in that regard was harmless. *Parra*, 481 F.3d at 747 (applying harmless error analysis to ALJ's failure to conduct disability determination before considering whether alcoholism was a material factor). The ALJ gave specific non-alcohol-use reasons supported by substantial evidence to find Claimant not disabled. (AR 2051-2060) (discussing Claimant's other impairments, namely diabetes and seizures; functional limitations; and ability to work.) These reasons, standing alone, are sufficient to affirm the decision of the ALJ.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the petition for review is **DISMISSED**.

DATED: March 31, 2021

Honorable Candy W. Dale
United States Magistrate Judge